IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Curtis Rena Hill, #296024,<br><br>                Plaintiff,<br><br>      vs.<br><br>Jon Ozmint, Director, South Carolina<br>Department of Corrections; Robert<br>Stevenson, Warden, Broad River<br>Correctional Institution; Karen Y.<br>McCullough, LPN; Marie A. Sherman,<br>LPN; and Donald R. Sampson,<br><br>                Defendants. | Civil Action No. 6:09-800-HMH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 44). The plaintiff, a state prisoner who is proceeding *pro se*, brought this action seeking relief pursuant to Title 42, United States Code, Section 1983. In his complaint, the plaintiff alleges deliberate indifference to his serious medical needs.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

On February 9, 2010, the defendants filed a motion for summary judgment. By order filed February 10, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on March 25, 2010. The defendants filed a reply on April 2, 2010.

## **FACTS PRESENTED**

The plaintiff is currently serving a three-year sentence for Threatening the Life of a Family Member of a Public Official. He began serving his sentence in October 2008. The plaintiff's complaint relates to alleged events that occurred during his current incarceration at the Broad River Correctional Institution ("BRCI"), a facility of the South Carolina Department of Corrections ("SCDC"). The plaintiff alleges that his Eighth Amendment rights have been violated by the five defendants named in his complaint: Jon Ozmint, Director of the SCDC; Robert Stevenson, Warden of BRCI; Karen Y. McCullough, LPN; Marie A. Sherman, LPN; and Donald R. Sampson, M.D.

The plaintiff alleges in his complaint that he was forced to wait for over a month to have an x-ray to diagnose a continually swollen, painful knee. He claims he signed up for sick call on February 15, 2009, but did not receive medical attention until March 13, 2009. He claims he was given pain medicine but was still in pain. He also claims that he personally wrote to Director Ozmint and Warden Stevenson about the delays in medical care. The plaintiff's complaint was dated March 17, 2009, and was received in the BRCI mailroom for filing on March 27, 2009. According to the complaint, the plaintiff was to have x-rays done on March 17th.

According to the affidavit of Mary E. Coleman, the Branch Chief of Inmate Grievances with the SCDC, the plaintiff filed three grievances between February 14, 2009, and March 30, 2009, the date his complaint was filed. The first, a Step 1 grievance, was filed on March 11, 2009. The second, also a Step 1 grievance, was also filed on March 11, 2009, and was not processed as it was a duplicate of the first grievance. Also, on March 19, 2009, the plaintiff filed another Step 1 grievance, which also was not processed as it was a duplicate of the first grievance. The first grievance was denied on June 10, 2009 (after the complaint was filed). The plaintiff filed a Step 2 grievance on June 17, 2009, which was denied on July 5, 2009. Mary Coleman aff. ¶¶ 2-4.

In support of their motion for summary judgment, the defendants submitted the plaintiff's medical records from February to September 2009. The records show that the plaintiff did not sign up on February 15, 2009, for sick-call regarding his knee. Rather, Encounter 169 establishes that he signed up for sick call on February 14, 2009, for a "rash" that "don't bother me unless I use the shampoo soap from shower water." On February 25, 2009, the plaintiff's records indicate at Encounter 170 that "inmate reported that he was feeling stressed out about not being able to get his legal work done in a timely manner." Encounter 171, dated February 27, 2009, reveals that the plaintiff received an antibiotic prescription. On February 28, 2009, the medical records show that the plaintiff wrote a sick-call request stating his left knee was swollen. He further stated that it hurt to stand on the leg for a long period of time. According to the plaintiff, he hurt his leg playing football in high school. The plaintiff's leg was examined, and he was noted to ambulate without difficulty with a slow steady gate. "Some swelling" and crepitus of the left knee were noted. On March 12, 2009, the plaintiff was seen by a doctor who noted the plaintiff stated he had knee pain and swelling for about three weeks. An x-ray was ordered and scheduled for March 30, 2010, and the plaintiff was advised to lose weight. Donna Curry aff., ex. A, med. record at pp. 21-24. The x-ray revealed no fractures, and the joint spaces appeared to be well-maintained. The examining doctor's conclusion was "no acute process is identified." Curry aff., ex. B, med. record at p. 23. The plaintiff's later encounters with the medical staff related to other issues, including bumps on his head, pain in his spine and groin, blood in his urine, elevated blood pressure, ear infection, stomach pain, and mental health issues. Curry aff., ex. A, med. record at pp. 1-21.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

3

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be

4

counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The defendants first argue that the plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The law is well established that the full exhaustion requirement is mandatory prior to even initiating a lawsuit under 42 U.S.C. § 1983. *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 677 (4th Cir. 2005). In fact, the United States District Court for the District of South Carolina has held that a prisoner cannot and "does not comply with the mandatory exhaustion requirements by exhausting his remedies during the course of litigation. Exhaustion is a prerequisite to suit that must be completed prior to filing an action." *Peoples v. Burtt*, C.A. No. 8:07-2702-CMC-BHH, 2008 WL 2315865, *3 (D.S.C. 2008) (citing *Anderson v. XYZ Correctional Health Services*, 407 F.3d 674, 677 (4th Cir. 2005)).

The plaintiff failed to exhaust his administrative remedies prior to filing this action. Ms. Coleman's affidavit reveals that between the date of February 14, 2009 (the plaintiff's alleged onset date of the present case is February 15, 2009) and March 30, 2009 (the date the complaint was filed), the plaintiff filed three Step 1 grievances – two were duplicative of the one filed on March 11, 2009 (just six days prior to the plaintiff's signing of his complaint). The one that was processed in full was denied on June 10, 2009; the plaintiff then filed a Step 2 grievance on June 17, 2009, which was denied on July 5, 2009. Moreover, there is no indication that the plaintiff ever appealed the decision from his Step 2 grievance to the South Carolina Administrative Law Court. Furthermore, there is no evidence here that prison officials made exhaustion impossible. *See Bacon v. Greene*, C.A.

No. 08-7358, 2009 WL 794939, *1 (4th Cir. 2009) (finding that an inmate suit cannot be dismissed for lack of exhaustion where there is a genuine issue as to whether the prison officials made exhaustion impossible). Based upon the foregoing, the plaintiff failed to exhaust his available administrative remedies prior to filing his complaint and, accordingly, the action should be dismissed.

Even if the plaintiff had properly exhausted his administrative remedies, the action fails on the merits. The plaintiff claims he was denied proper medical care and treatment from the SCDC medical staff. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference

6

may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The documents presented by defendants establish that no improper medical care has occurred. While the plaintiff may disagree that his medical diagnosis and treatment have been adequate, this disagreement does not rise to the level of a constitutional question or violation. Here, the plaintiff received adequate, regular treatment for his medical needs, including his knee pain. When his knee was x-rayed, the examining doctor identified "no acute process." Apparently the plaintiff had no further problems with his knee after the x-ray. Even if the plaintiff could establish a serious medical need, he has not shown the defendants' purposeful indifference thereto. Furthermore, the plaintiff fails to establish any of the requirements for stating a claim for inadequate care against non-medical supervisory medical personnel. *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct). Based upon the foregoing, the plaintiff's Eighth Amendment claim fails.

To the extent the plaintiff's allegations can be construed to allege a claim under state law, such a claim also should be dismissed. The defendants are all

7

government employees as defined under the South Carolina Tort Claims Act ("SCTCA"). *See* S.C. Code Ann. § 15-78-30(c). The SCTCA constitutes the exclusive remedy for torts committed by a government employee acting within the scope of his official duties. *Id.* § 15-78-70(a). In such a case, the agency or political subdivision for which the employee was acting is the proper party defendant. *Id.* § 15-78-70(c). Here, as argued by the defendants, substitution of the SCDC as a defendant would not avail the plaintiff in this case because the SCDC is not liable for loss resulting from its "responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any … inmate … except when the responsibility or duty is exercised in a grossly negligent manner." S.C. Code Ann. § 15-78-60(25). The South Carolina Supreme Court has interpreted gross negligence as the "failure to give slight care." *Etheredge v. Richland School Dist. I*, 534 S.E.2d 275, 277 (S.C. 2000). Here, the plaintiff has shown no evidence that any defendant failed to meet this standard. Accordingly, any claim arising under state law should also be dismissed.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 44) be granted.

s/Kevin F. McDonald
United States Magistrate Judge

June 8, 2010

Greenville, South Carolina

8